UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:                                        Case No. 07-42563-wsd

    DANAKILI, RONO,                   Chapter 13

        Debtor.                          Hon. Walter Shapero

_____/

## OPINION DENYING DEBTOR'S MOTION FOR CONTEMPT AGAINST GENERAL MOTORS CORPORATION AND FIDELITY INVESTMENTS

Before the Court is Debtor's *Motion For Contempt Against General Motors Corp. and Fidelity Investments for Violation of Order Confirming Plan*, Docket No. 50. The parties briefed their respective positions and a hearing was held.

### I.

The Debtor is employed with General Motors ("G.M."). As part of his employment, Debtor has a 401(k) plan, administered by G.M. Fidelity Investments Institutional Operations Company, Inc. ("Fidelity") serves as the claims fiduciary. The plan is a qualified employee pension benefit plan subject to restrictions imposed by the Internal Revenue Code.

On February 9, 2007, Debtor filed his chapter 13 voluntary petition. In Schedule B, Debtor lists as an asset "Employer's 401(k) plan" having a value of $44,168.26. In Schedule D Debtor lists as a secured claim "2003 & 2006, Equity Lien, Employers 401(k) plan", with a value of $44,168.26 and an amount owing of $11,360.38.

Debtor's chapter 13 plan lists in Class Five(b), dealing with other secured claims, a claim against the 401(k) plan. That claim is treated as modified, with the market value being $44,168.26; the interest rate being 6%; the total to be paid, including interest, $13,261.01; and the number of months from the confirmation date to be sixty (60). The plan further specifies the order of payment, with Class One, administrative expenses, being paid first; Class Two, continuing claims (of which there were two) plus Class Three (in which there were no claims)

-1-

and Class Five(a) (purchase money security interests in personal property, in which there was one claim) would then be paid ahead of all other classes; and then Class Four (arrearages on continuing claims, of which there were two), and then Class Five(b).  The essential details of the two 401(k) loans included in Class Five(b) are as follows:

|  | 05 Loan | 06 Loan |
|---|---|---|
| Date of Loan | August 2005 | March 2006 |
| Original Loan Amount | $5,000.00 | $8,000.00 |
| Due Date | 08/10/2010 | 03/11/2011 |
| Interest Rate | 6% | 7.25% |
| Weekly Repayment Amount | $22.28 | $36.71 |
| Balance Due (as per the separately filed claims) | $3,635.22 | $6,650.15 |

The plan was confirmed on April 19, 2007 without objection from GM or Fidelity.

Payments on the 401(k) loan claims were not made immediately, likely because of their junior priority position under the plan.  Before any payments on these claims commenced, Debtor received separate but substantively identical letters from GM/Fidelity, dated May 16, 2007, stating that the loans were in default; the amount to be paid to cure the default; a due date by which the defaults could be cured (June 30, 2007 in each case); informing that in the year a loan is defaulted, the total outstanding balance becomes taxable to the borrower and must be reported by GM/Fidelity to the Internal Revenue Service; and, finally, that if the overdue amount is repaid prior to the due date, the borrower will have no taxable event relating to such loan.  By separate letters from GM/Fidelity dated July 2, 2007, Debtor was informed that each loan had been defaulted and explaining the tax consequences of the default.  Apparently the trustee had not made any payments to GM/Fidelity as of that time, nor had Debtor individually.  Thereafter, the trustee issued the following distribution checks:

| Check Date(s) | Amount(s) | Payee(s) |
|---|---|---|
| 08-01-07 | 17.96 | GM Investment Service Center |

|  |  |  |
|---|---|---|
| 09-03-07 | 55.75 | GM Investment Service Center |
| 10-1-07 | 52.68 | GM Investment Service Center |

On that part of each check indicating what the remittance related to, there was stated the following:

> Rono Danakili
> BK 0742583 ACCT
> Prin 0.00 Int. (The amount of the check)
> Bal. 11,380.38 Code S 30000069

In due course each of the three checks was returned to the trustee with a letter (the last of the three being dated October 28, 2007) stating that the recipient could not process the check because it was not accompanied by any instructions indicating which loan the payment should be applied to. The instant motion was then filed on November 19, 2007.

The motion prays for: a finding of contempt on the part of GM/Fidelity on the basis that they violated the plan confirmation order; that GM/Fidelity be ordered to cease further collection of the loans, including issuance of any notice of default/distribution to the IRS and to retract any previously given notice; and, that GM/Fidelity be ordered to accept payments from the trustee and apply said payments to the loans pursuant to the terms of the confirmed plan. The motion also prays for costs and expenses of $1000 for having to bring the motion.

## II.

The issue presented in this matter is whether the actions of G.M. and Fidelity rise to the level of civil contempt of the Order Confirming Plan and warrant the award of fees and costs? The Court concludes they do not.

Like other courts, bankruptcy courts have the authority to determine civil contempt and to award appropriate damages. *In re Schewe*, 94 B.R. 938, 946 (Bankr. W.D. Mich. 1989) (citing *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir. 1988)). To establish civil contempt, the moving party must show by clear and convincing evidence that: (1) a specific and definite court order has been violated and (2) the person who violated the order had prior knowledge of it. *Id.* at 947; *see also*, *In re Rubin*, 378 F.2d 104, 108 (3d Cir. 1967) ("In order to

-3-

cite a person for contempt for violating a court order, two principles, each a corollary of the other, must, among other requirements, be established. The first of these is that it must be proved that the alleged contemnor had knowledge of the order which he is said to have violated. The corollary of this proposition is that the order which is said to have been violated must be specific and definite.").

When civil contempt is found to exist, appropriate sanctions can include compensatory damages, attorneys' fees, and punitive damages. Developing appropriate sanctions may require creativity, but the damages cannot be speculative. *Schewe*, 94 B.R. at 947; *Archer*, 853 F.2d at 499 ("[A] damage award must not be based on mere speculation, guess, or conjecture.").

In this matter, the plan itself lumps the two loans together and as such provides for their treatment and the order confirming the plan requires the trustee to make distributions pursuant to the terms of the plan. As the initial schedules indicate, and as Debtor no doubt knew, there were in fact two different loans with differing terms and conditions. Lumping them together in the plan had the effect of indicating each was to receive similar treatment, but, in the Court's view, such did not have the effect of changing the fact that there were two different loans. All that the plan did, and indeed all it could do, was change the terms of each loan to the extent permitted. Somehow, any payments made had to deal with the fact that there remained two loans. If the inevitable confusion wasn't appreciated initially, it should have become understood by Debtor and/or the trustee when the initial plan payments were returned. Indeed the matter should and could have been taken care of at that time by the Debtor and the trustee figuring out instructions to provide GM/Fidelity accompanying each payment, indicating how much of the single lump sum payment should be applied to each loan, and identifying each loan separately. Thus, the return of the checks and the issuance of the default notices were largely the fault of the Debtor and led to the defaulting of the loans and the issuance of the 1099R - both of which were simply the result of GM/Fidelity carrying out their normal legal responsibilities. The only direct order, the violation of which might be considered the basis for contempt in this case, was the order directing the trustee to pay in accordance with the plan. The trustee did make payments under the plan. The exact amount(s) to be paid, and when in relation to other claims of differing priority, and the likelihood, as was true in this case, the amounts paid might differ month to month, are all somewhat complicated matters of how a trustee administers the case and

determines amounts and frequency of payments, and certainly are not so clearly set forth or deducible from the confirmation order, as would support a contempt finding.

Furthermore, the Court construes the indicated default letters as little more than pinpointing the amount and nature of any default and a statement of the tax consequences of the failure to timely cure - not any prohibited collection effort that might afford a basis for contempt, either of the confirmation order or any applicable statutory provision. If Debtor believes the circumstances were such (and in particular the extension of the due dates of the loans pursuant to the confirmed plan), as precluded the distributions involved from being considered as taxable income - that is a matter between Debtor and the Internal Revenue Service. The mere issuance of the 1099R for 2007, in and of itself, is not dispositive of any taxability question and the Debtor certainly was, and may still be, free to contest the issue. In any event, it cannot afford a basis for a finding of contempt on the part of GM/Fidelity for having issued the 1099R in the first place. And, as noted, it was precipitated by a failure to properly denote the desired application of plan payments, not by any action on the part of GM/Fidelity which could be found to be in contempt of any specific Court order or statutory injunction. It is not clear from the record exactly when the 1099R was issued. It may very well have been after the motion was filed, and after the various payments were made and returned. That would underscore the ability the Debtor had to avoid the problem in the first place.

In sum, Debtor's motion is denied because (a) no specific Court order was violated by GM/Fidelity; and (b) Debtor is in essence estopped by his own actions or failures from claiming any contempt, and in large measure, is able to solve the problem involved by a combination of working with the trustee to make sure payments are properly applied to each loan when payments are remitted, and, taking up the matter with the IRS, if it asserts any tax liability arising from the facts.

## III.

In their briefs and during the hearing, the parties debated the plan's treatment of the loans in light of 11 U.S.C. § 1322(f). As the Court indicated on the record, the alterations pertaining to

the interest rate, length of repayment period, amount of individual payments, and consolidation of the two loans, are material alterations as specifically proposed. However, since no party objects to the plan's treatment of the loans, there is no decision for the Court to render on the matter.[1]

Accordingly, Debtor's motion is **DENIED**. G.M. and/or Fidelity shall submit an order consistent with this Opinion.

**Signed on September 23, 2008**

                                                **/s/ Walter Shapero**
                                                **Walter Shapero**
                                                **United States Bankruptcy Judge**

---

[1] Counsel for G.M. and Fidelity stated on the record at the March 31 hearing that they were not objecting to the loans' treatment under the plan, but simply defending the civil contempt charge.

07-42563-wsd    Doc 75    Filed 09/23/08    Entered 09/24/08 08:43:56    Page 6 of 6